IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| TOUCHPOINT PROJECTION INNOVATIONS, LLC, | § § § § § | |
| *Plaintiff,* | § § | |
| v. | § § | CIVIL ACTION NO.  2:23-CV-00233-JRG |
| CDNETWORKS CO., LTD., | § § § | |
| *Defendant.* | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion to Set Aside Default and Quash Service of Process (the "Motion") filed by CDNetworks Co., Ltd. ("CDNetworks" or "Defendant").  (Dkt. No. 10.)

### I.    BACKGROUND

In March of 2023, counsel for Touchpoint Projection Innovations, LLC ("Touchpoint" or "Plaintiff") exchanged written correspondence with counsel for CDNetworks, whereby CDNetworks provided Plaintiff with its registered address.  (Dkt. No. 10-1 at ¶ 3.)  Specifically, CDNetworks provided that its registered address was: 7F, 34, Mareunnae-ro, Jung-gu, Seoul, South Korea 04555.  (Dkt. No. 10-1 at ¶ 2.)

On May 26, 2023, Touchpoint filed this patent infringement lawsuit against CDNetworks. (Dkt. No. 1.)  In its Complaint, Touchpoint stated "[o]n information and belief" that Defendant was a corporation organized with its principal place of business at Winsland House I, 3 Killiney Road, #04-05, Singapore 239519.  (Dkt. No. 1.)  Touchpoint then attempted to serve CDNetworks by "[s]ervice via the Texas Secretary of State at 1019 Brazos, Austin, TX 78701 on July 12, 2023, with affidavit of service filed at Dkt. 4."  (Dkt. No. 6-1 at 1; Dkt. No. 4.)

On October 5, 2023, Touchpoint requested entry of default against CDNetworks with the clerk of the court, whereby Touchpoint swore therein that CDNetworks "failed to plead or otherwise defend herein as provided by the Federal Rules of Civil Procedure." (Dkt. No. 6 at 1; Dkt. No. 6-1.) Touchpoint also filed an "Affidavit in Support of Clerk's Entry of Default" certifying that Defendant "failed to serve an answer or other responsive pleading." (Dkt. No. 6-1 at 1.) In that affidavit, Touchpoint stated that CDNetworks was served "via the Texas Secretary of State at 1019 Brazos, Austin, TX 78701 on July 12, 2023, with affidavit of service filed at Dkt. 4." (Dkt. No. 6-1 at 1.) The Clerk of the Court entered the Entry of Default on October 5, 2023. (Dkt. No. 7.)

On April 9, 2024, CDNetworks contacted the Court via an email contesting service. (Dkt. No. 9). In an effort to follow up with the Court, CDNetworks then engaged local counsel and filed this Motion on June 28, 2024. (Dkt. No. 10.).

On July 11, 2024, Touchpoint filed an "Unopposed Motion for Time to Respond to CDNetworks' Motion to Set Aside Default," whereby it requested a 14-day extension up to July 26, 2024, which the Court granted on July 17, 2024. (Dkt. No. 11; Dkt. No. 12.) Touchpoint did not file a response to the Motion by the Court's deadline. (*See* Dkt.) Without leave of Court, Touchpoint then filed its "Response in Support of CDNetworks' Motion to Set Aside Default" on August 8, 2024, whereby Touchpoint "join[ed]" Defendant's Motion. (Dkt. No. 13.) On August 12, 2024, CDNetworks filed its Opposed Motion to Strike Document No. 13 on the grounds that Touchpoint's response was untimely.[1]

---

[1] CDNetworks argues in its Motion to Strike that Plaintiff's Response in Document No. 13 was not only untimely, but that Plaintiff's representation to Court that a meet-and-confer occurred were also "completely false." (Dkt. No. 14.) The Court notes that Touchpoint offers no excuse for its untimely response but continues to assert that service was proper such that the default against CDNetworks for not answering the Complaint should stand. (Dkt. No. 13.) The Court has discretion to strike an untimely response. *Hutton v. Bank of N.Y. Mellon Tr. Co., N.A.*, 847 F. App'x 252, 253 (5th Cir. 2021). The Court finds that the Motion to Strike Document No. 13 is hereby and should be

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 55(c), a court has discretion to set aside an entry of default where there is "good cause." Fed. R. Civ. P. 55(c).   Even in the absence of "good cause," however, the district court "must set aside the clerk of court's entry of default as a matter of law" if the court lacks personal jurisdiction over the defendant due to improper service of process. *Garza v. Altaire Pharm., Inc.*, No. 3:20-CV-1524-B, 2020 U.S. Dist. LEXIS 168148, at \*4 (N.D. Tex. 2020); *see also Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 940 (5th Cir. 1999) ("When a district court lacks jurisdiction over a defendant because of improper service of process, the default judgment is void and must be set aside.").

### A.  Courts <u>may</u> set aside entry of default when the "good cause" requirement is satisfied.

Good cause "is not susceptible of precise definition, and no fixed, rigid standard can anticipate all of the situations that may occasion the failure of a party to answer a complaint timely." *In re Dierschke*, 975 F.2d 181, 183 (5th Cir. 1992).   Thus, the "good cause" standard is liberally construed. *Effjohn Int'l Cruise Holdings, Inc. v. A&L Sales, Inc.*, 346 F.3d 552, 563 (5th Cir. 2003).   Generally, to determine whether a defendant has shown good cause under Rule 55(c), a court should consider the following factors: (1) whether the default was willful; (2) whether the plaintiff would be prejudiced; and (3) whether the defendant presents a meritorious defense. *Dierschke*, 975 F.2d at 184.   The court need not consider all of these factors. *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 64 (5th Cir. 1992).   Nevertheless, the Court favors resolving actions on the merits and therefore will resolve any doubts in favor of the defendants. *See Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000).   Ultimately, "[t]he decision to set aside a default

---

GRANTED.  With no response from Touchpoint on the record, the Court accepts CDNetworks' factual allegations in its Motion as undisputed.  *See Hutton*, 847 F. App'x 252 at 253.

decree lies within the sound discretion of the district court." *United States v. One Parcel of Real Prop.*, 763 F.2d 181, 183 (5th Cir. 1985).

**B. Courts <u>must</u> set aside entry of default when the court lacks personal jurisdiction due to improper service.**

Nonetheless, even in the absence of "good cause," the court "must set aside the clerk of court's entry of default as a matter of law" if the district court lacks personal jurisdiction over the defendant due to improper service of process. *Garza v. Altaire Pharm., Inc.*, No. 3:20-CV-1524-B, 2020 U.S. Dist. LEXIS 168148, at *4 (N.D. Tex. 2020). "[O]nce the validity of service of process has been contested, the plaintiff bears the burden of establishing its validity." *Henderson v. Republic of Tex. Biker Rally, Inc.*, 672 F. App'x 383, 384 (5th Cir. 2016) (quoting *Carimi v. Royal Carribean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992)). Typically, a plaintiff may satisfy this burden by "producing the process server's return of service, which is generally accepted as <u>prima facie</u> evidence of the manner in which service was effected." *Nabulsi v. Nahyan*, 2009 U.S. Dist. LEXIS 49661, at *4 (S.D. Tex. June 12, 2009), aff'd, 383 Fed. App'x 380 (5th Cir. 2010) (per curiam).

**C. Federal Rule of Civil Procedure 4(h) governs service on foreign corporations.**

Federal Rule of Civil Procedure 4 governs service of process. Subsection (h) of Rule 4 allows a foreign business entity to be served:

(1) in a judicial district of the United States:

> (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or
>
> (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant; or

(2) in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)."

Fed. R. Civ. P. 4(h).  Under Rule 4(h)(2), service of process of an individual in a foreign country may be served:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>
>> (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
>>
>> (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
>>
>> (C) unless prohibited by the foreign country's law, by: . . .[2]
>>
>>> (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
>
> (3) by other means not prohibited by international agreement, as the court orders."

Fed. R. Civ. P. 4(f)(1)-(3); *see also Deep Web, LLC v. Kakao Corp.*, 2020 U.S. Dist. LEXIS 258828, *3 (E.D. Tex. Oct. 3, 2020).

The United States and South Korea are both signatories to the Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters (the "Hague Convention").  *Moreno v. Allison Med., Inc.*, No. 3:20-cv-00300, 2022 U.S. Dist. LEXIS 155064, at *9 (S.D. Tex. Aug. 9, 2022); *see also* HAGUE CONFERENCE ON PRIVATE INTERNATIONAL LAW (HCCH), *Member:    Republic    of    Korea*,    https://www.hcch.net/en/states/hcch-members/details1/?sid=48 (last visited August 14, 2024).  The Hague Convention allows a plaintiff to effect service of process on a foreign individual in several ways.  *Moreno*, 2022 U.S. Dist. LEXIS 155064, at *8.  The most common method is service through a "central authority," an entity

---

[2]  The Court omits Federal Rule of Civil Procedure 4(f)(2)(C)(i) because 4(h)(2) explicitly prohibits this method for service on foreign corporations.

each signatory country must establish to receive requests for service of documents from other countries. *Id.* at *9. Once a central authority receives a request in the proper form, it must serve the documents. *Id.* When service is completed, the central authority returns a completed Certificate of Service to the party that requested service. *See* Hague Convention, art. 6; *Water Splash, Inc. v. Menon*, 581 U.S. 271, 275 (2017) ("When a central authority receives an appropriate request, it must serve the documents or arrange for their service, Art. 5, and then provide a certificate of service, art. 6.").

When a signatory to the Hague Convention is served through the Texas Secretary of State, the Hague Convention is implicated. *Freedom Pats. LLC v. TCL Elecs. Holding Ltd..*, Civil Action No. 4:23-cv-00420, 2023 U.S. Dist. LEXIS 201545, at *12-13 (E.D. Tex. Nov. 9, 2023). The statutory provisions for service via the Texas Secretary of State requires the Secretary of State to "send notice of the complaint to the nonresident." *Id.* The Certificates of Service issued by the Secretary of State back to the plaintiff will include the address of the nonresident defendant where the Secretary sent the Summons and Original Complaint. *Id.* at *13.

South Korea, however, has objected to service by mail under Article 10 of the Hague Convention. *Moreno*, 2022 U.S. Dist. LEXIS 155064, at *8. Courts have found that service of foreign corporate defendants through the Texas Secretary of State is not permissible where the signatory to the Hague Convention expressly objects to service. *See, e.g., Freedom Pats.*, 2023 U.S. Dist. LEXIS 201545, at *15-16 (finding that service on foreign defendants organized and existing in the People's Republic of China via the Texas Secretary of State is not permissible because the People's Republic of China is a signatory to the Hague Convention, and it expressly objects to service by mail).

As a result, to properly serve a nonresident defendant in South Korea through the Hague

Convention, service must be through the Central Authority in South Korea as set forth in the Hague

Convention.  While other methods of service may be available, the plaintiff bears the burden of

establishing its validity once service of process has been contested.  *Henderson v. Republic of Tex.*

*Biker Rally, Inc.*, 672 F. App'x 383, 384 (5th Cir. 2016).

## III.    DISCUSSION

In its Motion, CDNetworks requests that the Court set aside the entry of default and quash

service of process because it was not properly served and also find that the Court does not have

personal jurisdiction over it. (Dkt. No. 10 at 2.)  Since CDNetworks has properly challenged

service of process, Touchpoint bears the burden of establishing the validity of service of process.

*See Henderson*, 672 F. App'x at 384.  Based on what is before it, the Court finds that Touchpoint

has not met its burden of establishing the validity of service of process in this case.

As a preliminary matter, CDNetworks is correct when it represents that while Touchpoint

attempted to serve process on it by serving the Office of the Texas Secretary of State, the record

in this case is "devoid of what happened next, if anything."  (*Id.* at 6.)  Here, the Affidavit of

Service issued by the Texas Secretary of State and returned to Touchpoint (Dkt. No. 4.) does not

include the registered address of the nonresident defendant where the Summons and Original

Complaint were sent.  *See, e.g., Freedom Pats,* 2023 U.S. Dist. LEXIS 201545, at *12-13 (E.D.

Tex. Nov. 9, 2023) ("The Certificates of Service issued by the Secretary of State back to the

plaintiff will include the address of the nonresident defendant where the Secretary sent the

Summons and Original Complaint."); s*ee also Duarte v. Michelin N. Am., Inc.*, 2013 U.S. Dist.

LEXIS 73862, at *5, 8 (S.D. Tex. May 3, 2013) ("After service in compliance with [Texas

Business Organizations Code] § 5.252, the secretary of state immediately sends one of the copies

of the process, notice or demand to the named entity by certified mail, return receipt requested. .

. . Because the secretary of state must send copies of the documents to Japan in order for defendants to have notice of the lawsuit and for the court to have jurisdiction over them, the Hague convention applies."). Touchpoint has pointed to no authority stating that service upon the Texas Secretary of State, without more, suffices for service upon a foreign corporation.

Additionally, Touchpoint has neither provided evidence that the South Korea Central Authority returned a completed Certificate of Service or that Korea allows alternative methods of service beyond the Hague Convention, such as by service through the Texas Secretary of State.

The Court concludes that Touchpoint has not met its burden to establish the validity of previous service on CDNetworks. Since Touchpoint has failed to establish the validity of service on CDNetworks, the Court need not address CDNetworks' alternative argument that good cause exist to set aside entry of default. (Dkt. No. 10 at 2.).

## IV.    CONCLUSION

For the reasons expressed in this Order, the Court finds that the Motion should be **GRANTED**. Accordingly, the Court **ORDERS** that the Clerk's Entry of Default be **SET ASIDE**, and that Plaintiff properly and forthwith serve Defendant under the Hague Convention. Failure to affect such proper service and otherwise prosecute this action diligently may cause the Court in the future to require Plaintiff to show cause why this action should not be dismissed. Additionally, CDNetworks' Motion to Strike Document 13 (Dkt. 14) is also **GRANTED**.

**So ORDERED and SIGNED this 30th day of August, 2024.**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE

8